[In Bank. — March 23, 1883.]

## CENTRAL PACIFIC RAILROAD COMPANY, APEL-LANT, v. A. R. SHACKELFORD, RESPONDENT.

STATUTE OF LIMITATIONS — ADVERSE POSSESSION — PAYMENT OF TAXES — EJECTMENT. — Section 325 of the Code of Civil Procedure as amended in 1878 is not retro-active; and where a defendant in ejectment shows that his adverse claim and occupancy began three years prior to the amendment of that section, and continued until the commencement of the action, a period of more than five years, and that he had paid all taxes levied and assessed upon the land subsequent to the amendment of the section, his adverse possession is established.

STATUTORY CONSTRUCTION — AMENDMENTS OF THE CODES. — The form in which amendments of the Code have generally been made, by declaring that particular sections shall be amended so as to read in a given way, was adopted for the purpose of adjusting them to the original enactments, so that when the system should after repeated amendments become complete, the different parts might be put together without further revision, and thus form a perfect Code. The portions of the amended sections which are merely copied without change are not to be considered as repealed and again enacted, but to have been the law all along; and the new parts, or the changed portions, are not to be taken to have been the law at any time prior to the passage of the amended act.

APPEAL from a judgment of the Superior Court of Colusa County.

The action was ejectment. The remaining facts are stated in the opinion of the court, and in the dissenting opinion of Mr. Justice McKee.

*Goad & Redding,* and *S. W. Sanderson,* for Appellant.

The issue is: Is the plaintiff's right of action barred by the Statute of Limitations? or, put in another way, —

Has defendant, on the 28th day of October, 1881 (the date of the commencement of the suit), established an adverse possession under the facts as agreed upon?

It is plain that there is a vast discrepancy between what the defendant has done, and what the statute in October, 1881, says must have been done to claim the establishment of an adverse possession.

The defendant has not occupied and claimed the land adversely and continuously for five years and paid all the taxes, State, county, or municipal, levied and assessed upon said land.

The defendant has occupied and claimed the land adversely and continuously for five years, and paid all taxes, State, county, or municipal, levied upon said land since April 1, 1878.

He certainly has not performed the letter of the statute as it reads when the suit was brought.

The universal rule is that in disseizin the Statute of Limitations in force when the suit was commenced governs the case, and any deviation from its provision is fatal. (Potter's Dwarris on Statutes, 146, and cases cited; *Manchester* v. *Doddridge,* 3 Ind. 360; *State* v. *Swope,* 7 Ind. 91, and cases cited.)

Now, in the case at bar, does the amendment of April 1, 1878, to affect this adverse occupier, take away or impair any vested right that he has acquired under existing laws? Does it create a new obligation or attach a new disability to a *past transaction* in compelling him to pay all the taxes levied and assessed on said land?

This adverse occupier in 1878 is not in existence in the eyes of the law except as a trespasser, a *tort feasor.*

If the amendment of April 1, 1878, does not affect and include him, whom does it affect and include? What standing in court can he possibly have, unless he can show that he has

complied with the strict letter of the statute as it reads five years from the date of his entry?

This we affirm to be the true and only criterion of an adverse occupier's status:—

Has he performed the strict letter of the statute as it reads five years from the date of his entry?

There is no such thing as the establishment of an adverse possession for three years, or for four years eleven months and twenty-nine days.

The establishment of adverse possession means an adverse possession taken and held with the requisites and circumstances specified in the statute for the required time, and until the adverse occupier can prove this, he is a trespasser subject to the will of the legislature. (*Hill* v. *Saunders*, 6 Rich. 67, 68; *Horton* v. *Crawford*, 10 Tex. 382; Tyler on Ejectment, 165.)

*Dyas & Bridgford*, for Respondent.

We claim that where a portion of the five years preceded the amendment of section 325 on April 1, 1878, that it is not necessary, in order to establish adverse possession in the defendant, for him to show payment of taxes for that time which elapsed before the date of said amendment.

The admitted facts show conclusively that the defendant complied with the requirements of said section 325 during all of that time which elapsed before the said amendment thereof, as said section stood before said amendment, and has since said time (April 1, 1878), complied with the requirements of said section as amended.

Then, on April 1, 1878, the defendant was, and had been since the 18th day of March, 1875, in the adverse possession of the lands described in the complaint.

The legislature, by the amendment of section 325, did not make that which was, and had been adverse, any the less adverse; and could not have done so without making a law which would have been retroactive, which section 325 does not purport to be. (Code Civil Proc. § 3; *Sharp* v. *Blankenship*, 59 Cal. 288.)

Counsel for plaintiff argue that the amendment of 1878

operates as a repeal of the old section. The only change made was the adding of the provision requiring the payment of taxes. So far as they are the same it is to be treated as a continuation of the old law, and not as a new enactment. (Code Civ. Proc. § 5.)

If section 325 is to be treated as a Statute of Limitation, then the time which had run before the amendment thereof is deemed part of the time prescribed as such limitation. (Code Civ. Proc. § 9; *Benjamin* v. *Eldridge,* 50 Cal. 612.)

SHARPSTEIN, J.—The record shows that the defendant had been in the adverse possession of the demanded premises more than three years before the legislature amended section 325 of the Code of Civil Procedure by adding thereto the following proviso: "*Provided, however,* that in no case shall adverse possession be considered established under any section or sections of this Code unless it shall be shown that the land has been occupied and claimed for the period of five years continuously, and the party or persons, their predecessors and grantors, have paid all the taxes, State, county, or municipal, which have been levied and assessed upon said land," and such adverse possession continued until the commencement of this action, which was more than two years after the enactment of said proviso. Since the passage of said proviso the defendant is conceded to "have paid all the taxes, State, county, or municipal, which have been levied and assessed upon said land." But it is contended by the appellant that in order to establish an adverse possession it was incumbent on the defendant to show that he had paid said taxes during the entire period of his occupancy of the land. In other words, that he must not only show that since the passage of said proviso he has fully complied with all of its requirements, but that in anticipation of its passage he did all which he would have been required to, if said proviso had been enacted three years before it was. That this would be giving to said proviso a retroactive effect is quite clear, and that it cannot have because no part of the Code of Civil Procedure "is retroactive unless expressly so declared." (Code Civ. Proc. § 3.)

It is contended by appellant that by giving to this proviso a retroactive effect, i. e., by holding that the first three years of

the respondent's possession were not adverse, by reason of his not having paid the taxes levied and assessed on the land during those three years, would not be to destroy a vested right, because he could acquire no right as against the owner of the legal title by less than five years' possession.  The question in this case is not whether, if construed as the appellant insists it should be, the law would destroy a vested right, but whether if so construed the law would have a retroactive effect, which it cannot have because the legislature has not "expressly so declared."

And if it cannot have a retroactive operation it can in no way benefit the appellant in this case.

There is another provision of the same Code on which respondent's counsel relies.  It reads as follows:—

"When a limitation or period of time prescribed in any existing statute for acquiring a right or barring a remedy, or for any other purpose, has begun to run before this Code goes into effect, and the same or any limitation is prescribed in this Code, the time which has already run shall be deemed part of the time prescribed as such limitation by this Code."  (Code Civ. Proc. § 9.)

But the counsel for appellant contends that these sections only apply to cases which arose before the adoption of the Code in its original form.  And that an amendment to the Code may, without any express declaration, have a retroactive operation. In other words, that the amended section should be considered as though it had been originally enacted in its present form. Our own views upon this point are very clearly expressed in *Ely* v. *Holton,* 15 N. Y. 598, from which we quote the following:—

"The form in which amendments, both of the Code and of the Revised Statutes have generally been made by declaring that particular sections shall be amended so as to read in a given way, was adopted for the purpose of adjusting them to the original enactments, so that when the system should, after repeated amendments, become complete, the different parts might be put together without further revision, and thus form a perfect Code.  The portions of the amended sections which are merely copied without change are not to be considered as repealed and again enacted, but to have been the law all along;

and the new parts, or the changed portions, are not to be taken to have been the law at any time prior to the passage of the amended act."

The Code, so far as it relates to the payment of taxes by persons holding lands adversely to the owners of the legal titles to such lands, did not go into effect until sixty days after April 1, 1878, and it did not in our opinion change the character of the defendant's possession prior to that date, because it was not retroactive, and if not retroactive it could not; and because under section nine of said Code the time which had already run when the amendment of April 1, 1878, went into effect must be deemed a part of the time prescribed by the Code as amended.

Judgment affirmed.

Thornton, J., McKinstry, J., and Myrick, J., concurred.

McKee, J.—I dissent. The right of entry upon the demanded premises, asserted by the plaintiff, was founded upon a United States patent, which was issued and delivered to the plaintiff on the 17th of March, 1875, and purported to convey the premises in question with other lands. The action upon this patent was commenced on the 28th of October, 1881.

On the 18th of March, 1875, defendant entered upon the land; and at the commencement of the action he was in possession of it, and had been in the actual and exclusive possession of the same continuously for six years before he was sued. During that time he claimed the land adversely to the title of the plaintiff, and for three years of the time, namely, from the year 1878 until the year 1881, he paid all the taxes which had been levied upon the land. Upon these facts the court below decided that the plaintiff's action was barred by the Statute of Limitations, and ordered judgment accordingly. I think the decision and judgment are erroneous.

By the patent the plaintiff established the legal title to the property. From this fact two legal presumptions resulted: First, that the plaintiff, as holder of the legal title, had been possessed of the property within five years before the commencement of the suit; and secondly, that the occupation by the defendant was under and in subordination to the legal title.

Upon these presumptions the plaintiff was entitled to judgment, unless the defendant overcame them by proof that he had held and possessed the property adversely to the legal title for five years before the commencement of the suit.    (§§ 318, 321, Code Civ. Proc.)

Negatively the proof shows that the defendant did not claim the land under color of title.    His claim was that he had acquired title at the commencement of the suit by adverse possession under the Statute of Limitations.    To establish the acquisition of such a title, it was necessary for him to prove that he had claimed and occupied the land for five years continuously before the commencement of the suit, by a substantial enclosure of the land, or by its usual cultivation or improvement, and the payment of all taxes which have been levied and assessed upon it.    (§ 325, Code Civ. Proc.)    These were the requisites and requirements of adverse possession as a source of title under the Code as it was when the defendant was sued. And the practical question arises, has the defendant proved an adverse possession with the requisites and requirements of the Code for the time prescribed?

The proof answers the question in the negative; for although it shows that the defendant occupied and claimed the land for the period of five years continuously, it also shows that he has *not* paid the taxes levied and assessed upon it during the period of five years.    Therefore the Statute of Limitations has not run in his favor.

But it is urged that as the Code did not require the payment of taxes as essential to adverse possession before the amendment of April 1, 1878, it was not necessary for the defendant to prove payment of taxes for five years; and as he has, in fact, paid the taxes every year since 1878, for a period of three years, he has complied with the law.

The payment of taxes for five years was, however, one of the circumstances specified in the section of the Code invoked by the defendant as requisite to constitute the adverse possession necessary to confer title.    As the Code stood when he invoked it, there was no such thing as a Statute of Limitations founded upon three years' adverse possession, and no such thing as a Statute of Limitations founded upon an adverse possession for

five years *without* payment of taxes. The fact, then, that the defendant had continuously occupied the land for six years adversely to the plaintiff, and had paid the taxes levied upon the land for three years of that time, was not proof of the adverse possession for five years, which the law required.

The right asserted by the defendant depended wholly upon section 325 of the Code of Civil Procedure as it was at the commencement of the suit. No absolute right to the land had been acquired by the three years' adverse possession before the amendment of the section on April 1, 1878. At that time the defendant was in law a trespasser upon the land, without right or claim of title; or if he had any right it was inchoate and imperfect, and subject to any legislation upon the section of the Code under which the right was claimed. It was not a vested right; being inchoate and imperfect, it fell with the repeal of the law upon which it depended. The amendment of 1878 operated as a repeal of the law as it had previously existed. (*Billings* v. *Harvey*, 6 Cal. 381; *Billings* v. *Hall*, 7 Cal. 1; *Clark* v. *Huber*, 25 Cal. 596; *Bensley* v. *Ellis*, 39 Cal. 313.)

A Statute of Limitations is purely an act of grace on the part of the legislature. Such an enactment is a measure of public policy only. It is entirely subject to the mere will of the legislative power, and may be changed or repealed altogether as that power may see fit to declare. Such legislation relates to the remedy only, and not to any property right or contract right. (*Billings* v. *Hall*, *supra*.) It may have a retrospective operation; but retroactive legislation is not unconstitutional where it only affects the remedy. (*Comm.* v. *Duffy*, 96 Pa. St. 506.) Hence it has become a settled rule of law that when a title to land has been acquired by adverse possession under a statute, the legislature does not possess the power to destroy the same, and a repeal of the statute does not divest the title (*Sharp* v. *Blankenship*, 59 Cal. 288); but at any time before the title has become vested the statute may be repealed or altered, either by shortening or lengthening the period required to make the title absolute. (Wood on Limitations, § 35.)

Petition for a rehearing denied.