Morrow, District Judge.
This suit is brought by Charles Haritwen against the steam schooner Louis Olsen, to recover the sum of $1,396.80, claimed to be due the libelant as wages. The claimant excepts to the libel on the ground that it appears from the libel that whatever wages *653 were earned for any services performed or rendered by the libelant were so earned by him while he was acting in the capacity of master of the vessel. The lien is claimed by the libelant under the provisions of section 813. of the Code of Civil Procedure of this state, which, among other things, provides that “all steamers, vessels, and boats are liable (1) for services rendered on board at the request of, or on contract with, their respective owners, agents, masters, or consignees.” In the case of The Lottawanna, 21 Wall. 558-580, it was held by the supreme court that the district courts of the United States, having jurisdiction of a contract as a maritime one, might, under the provisions of the twelfth admiralty rule, as promulgated in 1872, enforce liens, given for its security, when created by the state laws. In the case of The Mary Gratwick, 2 Sawy. 342, the late Judge Hoffman held that the master of a vessel, engaged in navigating the interior waters of this state, might proceed in rem in this court to recover his wages upon the lien created by the law of this state. This decision was affirmed by Judge Field, sitting in the circuit court. It is not denied that such was the law at that time, but it is said, on behalf of the claimant, that the state lien no longer exists. At the time' The Mary Gratwick Case arose in this court, in 1872, the domestic lien was contained in section 317 of the practice act of this state. The Codes (Civil, Civil Procedure, Penal, and Political) took effect January 1,1873. The practice act was incorporated into the Code of Civil Procedure, and section 317 of the former act became section 813 of the latter Code. But in the Civil Code it was provided, in section 3055: “The master of a ship has a general lien, independent of possession, upon the ship and freightage, for advances necessarily made or liabilities necessarily incurred by him for the benefit of the ship, but has no lien for his wages.” Here is a conflict between provisions of the Code of Civil Procedure and the Civil Code, and the question is, which is now the law of this state?
The first inquiry would naturally be to ascertain which of these two sections was the last expression of the will of the legislature; but section 4480 of the Political Code provides that, “with relation to each other, the provisions of the four Codes must be construed * * * as though all such Codes had been passed at the same moment of time, and were parts of the same statute.” This provision disposes of any question as to which section was the later enactment. The location of two sections, in an ordinary statute, would afford a rule of construction in the presumption that the later section in number was the last in time, and intended to repeal the provisions of a prior conflicting section; but, in the present case, the conflicting sections belong to different Codes, and, under the foregoing rule of construction, we are not at liberty to assume that these two sections were passed otherwise than at the same moment of time.
We find, however, that section 813 of the Code of Civil Procedure was amended and re-enacted in 1874 by an act which amended the Code generally, and which provided that “all provisions of law inconsistent with the provisions of this act are hereby repealed; ” but, in this re-enactment, there was no change made in the subdivision of the section now under *654 consideration. The amendment was in another subdivision and upon a different subject. The constitution of this state requires that “no law shall be revised or amended by reference to its title; but in such case the act revised or section amended shall be re-enacted and published at length, as revised or amended.” Is such a re-enactment a sufficient expression of the will of the legislature to authorize us to hold that a lien in favor of the master for his wages, created by the first subdivision of section 813 of the Code of Civil Procedure, has been re-enacted so as to repeal that part of section 3055 of the Civil Code which declares that he has no lien?
In Sutherland on Statutory Construction, (section 133,) the rule respecting the effect of amendments of this character is stated as follows:
“The constitutional provision requiring amendments to be made by setting out the whole section as amended was not intended to make any different rule as to the effect of such amendments. So far as the section is changed, it must receive a new operation; but so far as it is not changed, it would be dangerous’to hold that the mere nominal re-enactment should have the effect of disturbing the whole body of statutes in pari materia which had been passed since the first enactment. There must be something in the nature of the new legislation to show such an intent with reasonable clearness before an implied repeal can be recognized. The amendment operates to repeal all of the section amended, not embraced in the amended form. The portions of the amended sections which are merely copied without change are not to be considered as repealed and again enacted, but to have been the law all along; and the new parts, or the changed portions, are not to be taken to have been the law at any time prior to the passage of the amended act.”
This rule is supported by abundant authority, and was approved by the supreme court of this state in Railroad Co. v. Shackelford, 63 Cal. 261-265. The re-enactment of section 813 of the Code of Civil Procedure is therefore without value in determining this question of conflict.
It is next claimed that section 4481 of the Political Code furnishes the proper rule of construction, as follows:
“If the provisions of any title conflict with or contravene the provisions of another title, the provisions of each title must prevail as to all matters and questions arising out of the subject-matter of such title.”
It is urged that section 3055 is found in a title of the Civil Code which treats of liens in general, whereas section 813 is found in a special place in the Code of Civil Procedure which treats of actions against steamers, vessels, and boats; and, as the question in controversy relates to a lien, it is claimed that the former section must prevail; but in People v. Freese, 76 Cal. 634, 18 Pac. Rep. 812, the supreme court of this state rejected this rule of construction in favor of a rule provided in section 5 of the Political Code, which is as follows:
“The provisions of this Code, so far as they are substantially the same as existing statutes, must be construed as continuations thereof, and not as new enactments.”
This is precisely the language of section 5 of the Code of Civil Procedure, and the question involved in People v. Freese, as to the superiority of certain conflicting sections of the Political Code, makes the deci *655 sion in that case authority; but, in making the application, we must notice, also, the rule of construction provided by section 5 of the Civil Code, as follows:
“The provisions of this Code, so far as they are substantially the same as existing statutes or the common law, must be construed as continuations thereof, and not as new enactments.”
The common law gave no lien to the master for his wages. Section 3055 of the Civil Code, declaring that the master has no lien for his wages, is therefore a declaration of the common law, and not a new enactment. Section 317 of the practice act, as we have seen, gave the master a lien for his wages. This was therefore a new right, created by statute, continued in the Code of Civil Procedure. In the practice act, it was in derogation of the common law; so it is in the Code of Civil Procedure. It is therefore claimed that the presence of the declaration, in section 3055 of the Civil Code, that the master has no lien for his wages, cannot be construed as an expression of a legislative intent to deprive him of his right of lien, expressly conferred by statute, and continued in its appropriate place in the other Code. The rule relied upon to justify this conclusion is this:
“Where two statutes in pari materia, originally enacted at different periods of time, are subsequently incorporated in a revision and re-enacted in substantially the same language, with the design to accomplish the purpose they were originally intended to produce, the time when they first took effect will be ascertained by the courts, and effect will be given to that which was the latest declaration of the will of the legislature, if they are not harmonious.” Suth. St. Const. § 161.
Now, if we go behind the Codes in this case, and look at the date of the original enactments, we find that the common law of England was adopted as the rule of decision in all the courts of this state by the act of April 13,1850, while the practice act, giving the master a lien for his wages, was passed, by the legislature, April 29, 1851. This last act, as before stated, has been continued in section 813 of the Code of Civil Procedure, and, as it is the last enactment in point of time, it should control as the last expressed will of the legislature. This rule of construction was adopted in Bank v. Patty, 16 Fed. Rep. 751, with respect to the conflicting provisions of two different Alabama statutes. The act of 1867, (Alabama statutes) declared that bills of exchange and promissory notes, payable at a bank or private banking house, should be governed by the commercial law. The act' of 1863 declared that such documents, payable at a bank or banking house “or a certain place of payment therein designated,” should be so governed. Under the first statute, a note payable at a specified place, not a bank or banking house, was not negotiable; under the other, such a note was negotiable. These two statutes were incorporated into a Code,—the later statute being section 2094, the earlier being section 2100. If the latter section were adopted as the last expression of the legislative will, the court would have to hold that the act of 1867, so far as it conflicted with the act of 1873, would control. But, it having been held by the supreme court of the United States *656 (Oates v. Bank, 100 U. S. 239,) that the act of 1873 repealed the act of 1867, the circuit court now held that the presence, in the Code, of the act of 1867, “was clearly an oversight in the codifiers, which was not observed by the legislature when it was adopted. The supreme court of Alabama, in such cases, has decided that, in determining the legislative intent, the date of the enactment will be looked to, and the last one in time will be held to be the law.”
In 1877 the question as to the master’s lien for wages under these Code provisions arose in this court in the case of E. D. Wheeler v. The Kate. From the notes of the argument, taken by the late Judge Hoffman, it appears that substantially the same argument was made in favor of the master’s lien as was made in the present case; and, while the learned judge left no opinion on file, it is said that he gave such oral intimations in favor of the lien that it was accepted as the law, and the owner of the tug paid the claim, and the libel was dismissed. In the case of John A. Wilson v. The Free Trade,[1] argued before me in February last, I endeavored to reconcile the conflicting sections of the two Codes by assuming that section 817 of the Code of Civil Procedure would operate, according to its terms, in favor of all persons rendering services on board of domestic steamers, vessels, and boats, except the master, who was made the subject of a special exclusion by the terms of section 3055 of the Civil Code. It appeared to me that, as the Codes are required to be treated as having been passed at the same moment of time, the. presumption was that the provisions of all the Codes were intended to operate, and to give effect to this presumption,I held that the provisions of section 3055 of the Civil Code, declaring that the master had no lien for his wages, should be construed as an exception to the general provisions of section 817 of the Code of Civil Procedure. But, in the argument of that case, my attention was not called to the provisions of sections 5 of the Civil Code and Code of Civil Procedure, and the rule of construction based upon those sections, as has been done in this case; nor was my attention called to the case of Wheeler v. The Kate. On the contrary, I was informed that it had not been the practice in this court to recognize the state statute as giving the master a lien for his wages, and, following what I supposed to be the established law of this district and the rule of construction just mentioned, I refused to entertain the master’s claim to a lien. Much may be said on either side of the question; but, in the light of the argument in the present case, the authorities cited, and the fact the law of this district appears to have been in favor of the domestic lien, I am of the opinion that section 813 of the Code of Civil Procedure declares the last expressed will of the legislature of this state, and establishes the master’s lien for his wages.
The exceptions to the libel will therefore be overruled.

 The opinion in this case was oral, and has not been reported.