[Sac. No. 848.   Department One. — August 3, 1901.]

In the Matter of the Estate of D. E. RICHARDS, Deceased. ELIZABETH M. RICHARDS, Appellant.   LYDIA RICHARDS, Respondent.

MARRIAGE IN ANOTHER STATE — LAW NOT PROVED — VALIDITY UNDER CALIFORNIA LAW — PRESUMPTION. — Where a marriage was solemnized by a justice of the peace in another state, in the absence of proof of the law authorizing such solemnization, the question of the validity of the marriage must be determined by the laws of this state.   It must be presumed, in such case, that the laws of such other state were the same as the laws of this state at the date of the marriage.

ID. — CONSENT FOLLOWED BY ASSUMPTION OF MARITAL RIGHTS AND DUTIES. — Where the evidence shows a consent to marriage, followed by a mutual assumption of marital rights and duties or obligations, and the cohabitation of the parties as husband and wife, or mutual consent to and subsequent consummation of marriage in pursuance of sections 55 and 57 of the Civil Code as they stood at the date of the marriage, the validity of the marriage is thereby established.

ID. — AMENDMENTS OF CODE NOT RETROACTIVE. — The amendments of 1895 to sections 55 and 68 of the Civil Code are not retroactive, and cannot apply to a prior marriage.

ID. — UNLAWFUL SECOND MARRIAGE — PRESUMPTION. — Where a deceased husband left his first wife in another state, and came to this state, in the absence of any proof or repute of her death, there is no presumption that he believed her dead after an absence of five years on his part, but the presumption is to the contrary; and a second marriage by him, in this state, without any prior divorce or annulment of the former marriage, is unlawful.

ID. — ESTATE OF DECEASED HUSBAND — DISTRIBUTION TO WIDOW. — A deceased husband can leave but one widow; and where his estate is of less value than fifteen hundred dollars, it was the duty of the court to distribute the whole amount thereof to his lawful widow, to the exclusion of one claiming under an invalid second marriage.

ID. — EFFECT OF ORDER OF DISTRIBUTION — OUTSTANDING TITLE. — The order of distribution only sets apart the title and interest of the deceased, which may not be perfect, and cannot affect an outstanding title in the hands of a third person.

ID. — ACTION BY ADMINISTRATOR TO SET ASIDE DEED — DISTRIBUTION SUBJECT TO PENDING SUIT. — The pendency of an action by the administrator to set aside a deed from the deceased husband to the woman to whom he was unlawfully married cannot destroy the jurisdiction of the court to distribute the estate of the husband to his widow subject to the pending suit.

APPEAL from an order of the Superior Court of Siskiyou County setting apart the estate of a deceased person to his widow.    J. S. Beard, Judge.

The facts are stated in the opinion.

J. H. Magoffey, for Appellant.

L. F. Coburn, and J. W. Parker, for Respondent.

COOPER, C. — Appeal from order setting aside the whole of the estate to the widow of deceased.   There is no question as to the value of the estate being less than fifteen hundred dollars, and that it was the duty of the court to set it aside to the widow.   The principal question to be determined is as to which of the contending parties is the widow.

A petition was filed by one Lydia, claiming to be Lydia Richards, the surviving widow.

An opposition to this petition was filed, and also a petition by one Elizabeth, claiming to be Elizabeth Richards, the surviving widow.   Upon the issue thus made, the court heard evidence and filed findings, of which finding 1 is as follows: "The court finds that the petitioner, Lydia Richards, on the seventeenth day of September, 1880, in the state of Missouri,

intermarried with said deceased, and from that time down to the time of his death she and the deceased were husband and wife, and that she is now the surviving widow of said deceased." And finding 4 is as follows: "The court finds that the petitioner, Elizabeth Richards, never at any time or place intermarried with said deceased, the said deceased being, at the time of the alleged marriage to said Elizabeth Richards, the husband of said Lydia Richards, as before found, and the said Elizabeth Richards is not the surviving widow of said deceased, although the court finds that she believed in good faith that she was legally married to and was the lawful wife of said deceased, as alleged in her said petition."

These findings are challenged as being without support in the evidence, and upon this the case must be determined.

In support of the first finding the uncontradicted testimony of Lydia Richards is as follows: "There was a solemnization of marriage performed between me and deceased on the seventeenth day of September, 1880, in the state of Missouri, by a justice of the peace. The justice of the peace said, 'Do you take one another to be your lawfully wedded husband and wife,' and we answered, 'I do,' in each case. I was standing at the side of Mr. Richards at that time. That was in the justice's office in the town of Butler, Bates County, Missouri. It was the county seat. Immediately after that we went home to Rich Hill, and lived together from that time on for four years, until he came away and left me. . . . During that four years Mr. Richards provided for me the necessaries of life, and I kept house for him and lived with him, and slept in the same bed with him, and went among his and my friends as husband and wife. . . . I continually cohabited with him. I had one child by him; it is dead."

This evidence supports the finding. The record fails to show that any proof was made as to the laws of the state of Missouri relative to the solemnization of marriage on the seventeenth day of September, 1880, or at any other time. The question as to whether or not the evidence shows a valid marriage will therefore have to be determined according to the laws of our own state, as without proof to the contrary the law in the state of Missouri is presumed to be the same as in this state. (*Marsters* v. *Lash*, 61 Cal. 622; *Shumway* v. *Leakey*, 67 Cal. 460.)

The Civil Code of this state, which went into effect on the

first day of January, 1873, provided, in section 55: "Marriage is a personal relation arising out of a civil contract, to which the consent of parties capable of making it is necessary. Consent alone will not constitute marriage; it must be followed by a solemnization, or by a mutual assumption of marital rights, duties, or obligations"; and in section 71: "No particular form for the ceremony of marriage is required, but the parties must declare in the presence of the person solemnizing the marriage that they take each other as husband and wife"; and in section 57: "Consent to and subsequent consummation of marriage may be manifested in any form, and may be proved under the same general rules of evidence as facts in other cases." These sections, as herein quoted, continued to be the law of this state until May, 1895, when amendments to said sections 55 and 57 went into effect. They were in force as originally enacted on September 17, 1880, when the marriage of deceased to Lydia took place. They contained, while in force, provisions similar to the laws in many other states. That a marriage may be inferred from cohabitation seems to be the settled law in most countries. The cohabitation as husband and wife is a manifestation of the parties having consented to contract such marriage *inter se.* It has been held by this court, in numerous cases, that, under the sections quoted, no particular form of ceremony was required, and that mutual consent followed by consummation was sufficient to constitute marriage. (*Estate of McCausland,* 52 Cal. 568; *Sharon* v. *Sharon,* 75 Cal. 9; *White* v. *White,* 82 Cal. 427.) Sections 55 and 68 of the Civil Code, as amended in March, 1895, have no application. They are not retroactive. (Civ. Code, sec. 3; *Central Pacific R. R. Co.* v. *Shackelford,* 63 Cal. 261; *Sharp* v. *Blankenship,* 59 Cal. 288.)

Finding 1 being supported by the evidence, it follows that finding 4 is correct. The deceased, while the lawful husband of Lydia, could not intermarry with Elizabeth, and therefore, as he left Lydia as his widow, he could not leave two widows.

The court did not err in admitting in evidence the testimony of Lydia Richards as to her residence and cohabitation with deceased, and the solemnization of the marriage. It was competent to prove the facts and circumstances tending to show a contract of marriage. It is claimed that the marriage of deceased with Elizabeth in March, 1896, was valid under section 61 of the Civil Code. That section expressly provides that a

subsequent marriage contracted by any person during the life of a former husband or wife of such person, with any person, other than such former husband or wife, is illegal and void from the beginning, unless,— "1. The former marriage has been annulled or dissolved; . . . 2. Unless such former husband or wife was absent, and not known to such person to be living for the space of five successive years immediately preceding such subsequent marriage, or was generally reputed or believed by such person to be dead at the time such subsequent marriage was contracted; in either of which cases the subsequent marriage is valid until its nullity is adjudged by a competent tribunal."

It is not claimed that the marriage of deceased with Lydia was ever annulled or dissolved. It is therefore self-evident that the first subdivision has no application. It is, however, urged that the second subdivision of the section applies, and that the former wife of deceased was absent, and not known by deceased to have been living, for the space of five years immediately preceding the subsequent marriage to Elizabeth. There is no evidence in the record to support this contention. It cannot be said that the former wife of deceased was absent, when the record shows that deceased left her in the state of Missouri and came to California. Deceased was the absent one, and was absent of his own volition. We cannot indulge the presumption that deceased believed his former wife to be dead. On the other hand, the presumption is, that, having married her and left her in the state of Missouri, he did not believe her to be dead. There is no evidence as to any belief or repute in any manner concerning the death of the former wife. As she was not dead, it would be folly for the court to presume a belief on the part of deceased as to a fact that did not exist, and that was never reputed to exist.

Finally, it is claimed that the court had no power to make the order, for the reason that a suit was pending by appellant, Elizabeth, against the administrator to recover lot 25 of block 26, in the town of Sisson, being part of the premises described in the order. It is sufficient to say that the order was made subject to the pending suit. In any event, it is the duty of the court, under section 1469 of the Code of Civil Procedure, to set apart the estate, where the whole thereof does not exceed the value of fifteen hundred dollars. The order only sets apart

the title and interest of deceased. It can do no more. It is not the purpose of the statute to have the court examine the title, and set apart such property on condition that the title is perfect. It is evident that the order cannot affect an outstand-.ing title in the hands of a third person.

..It follows that the order should be affirmed.

Chipman, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the order is affirmed.                    Harrison, J., Garoutte, J., Van Dyke, J.